IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GERMAN SANTILLANES;<br>a/k/a REYES SANTILLANES;<br>a/k/a GALILEO HERMES,<br><br>Defendant. | Case No. 3:26-cr-00086<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

The United States of America, by Nicholas W. Chase, United States Attorney for the District of North Dakota, and Katie Nechiporenko, Special Assistant United States Attorney, respectfully submits this response in opposition to the Defendant's pro se Motion to Dismiss Based Upon Violations of [His] Fifth and Sixth Amendment Rights.

## INTRODUCTION

The defendant moves to dismiss the indictment and suppress evidence based on alleged Fifth and Sixth Amendment violations arising from a July 2026 ICE encounter. He also claims the United States is attempting to use a fabricated Mexican death certificate. His arguments lack legal or factual support.

ICE contacted the defendant during an administrative inquiry into his identity and immigration status following fingerprint results associated with a Mexican national. During that encounter, the defendant affirmatively asserted his claimed identity and offered documentation purportedly establishing his United States' citizenship. Routine identification questions do not necessarily constitute interrogation under Miranda, even when the answers

subsequently become relevant to criminal charges. United States v. Sanchez-Velasco, 956 F.3d 576 (8th Cir. 2020).

Moreover, the defendant's Sixth Amendment right to counsel had not attached to the subsequently charged identity-related offenses. Even assuming the July encounter implicated Miranda, the defendant has not established that dismissal or wholesale suppression of the government's documentary and third-party evidence is warranted. Importantly, the defendant offers no substantiated basis for his allegation that the government fabricated evidence.

The defendant's disagreement with the government's evidence, including his reliance on a Mexican *Clave Unica de Registro de Población* ("CURP"), does not demonstrate fabrication or support Rule 403 exclusion. A CURP does not indicate whether its subject is alive nor does its existence contradict the validity of a death certificate.

Accordingly, the defendant's motions should be denied.

## FACTUAL BACKGROUND

German Santillanes, a/k/a Galileo Hermes, a/k/a Reyes Abel Santillanes ("German"), and his brother Alexander Santillanes ("Alexander") were arrested on May 02, 2026, in the District of North Dakota after being indicted on drug-trafficking charges. (Doc. 2). At the time of their arrest, the United States was aware that German had used multiple names or aliases but had not established how German obtained or used those identities. The United States' investigation focused on German and Alexander's involvement in drug-trafficking, and the United States did not intend to investigate or pursue separate identity-related charges. The defendant's repeated claims to be "Galileo," however, prompted an identity issue within the ongoing prosecution which needed to be verified.

As part of the routine identification procedures associated with German's May 2026 arrest, his fingerprints were collected and submitted. The fingerprint results were associated with a Mexican national, German Santillanes. Based on that information, ICE initiated an administrative inquiry to determine German's identity and immigration status.

In June 2026, Alexander provided information to law enforcement regarding German's identity. Specifically, Alexander disclosed that German was born in Mexico, was still a Mexican citizen, and had assumed the identity of their deceased cousin, Reyes Abel Santillanes ("Reyes"). Although this information provided an explanation for German's use of multiple identities, the prosecution remained focused on the drug-trafficking offenses.

On June 24, 2026, German filed a Faretta motion petitioning to proceed pro se. (Doc. 55). On July 02, 2026, ICE spoke with German at the Cass County Jail in Fargo, North Dakota, as part of its administrative inquiry into German's identity and immigration status. The purpose of this contact was to obtain basic identifying information and determine German's legal status in the United States.

According to the ICE agent, Deportation Officer Kautz ("D.O. Kautz"), German claimed his birth name was "Reyes Abel Santillanes" and that he had that name legally changed to "Galileo Hermes." German represented that he possessed documentation establishing his identity and United States citizenship, including a birth certificate, Driver's License, Social Security card, legal name change documents, and United States Passport. German further stated that D.O. Kautz should contact German's girlfriend, Jessica Melchor Zuno ("Jessica"), who possessed those documents and could provide them. D.O. Kautz contacted Jessica, and she subsequently emailed him the requested documents.

D.O. Kautz did not administer Miranda warnings because the encounter was conducted as a routine administrative immigration inquiry rather than a criminal interrogation. Furthermore, D.O. Kautz accepted German's representations as "relevant," meaning possibly legitimate, and discontinued the inquiry.

German was granted the ability to proceed pro se on July 28, 2026 (Doc. 71), and he continued to vehemently contend that he was Galileo, again, filing multiple motions to the Court and signing each as "Galileo Hermes."

In an effort to corroborate the identity-related portion of Alexander's proffer, since all other information Alexander provided about the drug-trafficking conspiracy had been likewise corroborated by external evidence, United States Postal Inspection Services Task Force Officer Justin Phillips ("T.F.O Phillips") requested Homeland Security Investigations Special Agent Eric Binstock ("S.A. Binstock") become involved in investigating German's identity. Through his investigation, S.A. Binstock obtained multiple records relating to German Santillanes including, but not limited to, a Mexican birth certificate, a Mexican Driver's License, and previous ICE encounters which included biometrics like fingerprints and photos. He also found documents relating to Reyes Abel Santillanes ("Reyes"), who held dual American and Mexican citizenship, including a California birth certificate, an Arizona Driver's License, a United States Passport from when Reyes was a child, a Mexican birth certificate outlining his California place of birth, a Mexican Driver's License, and death certificate issued by Mexico from when Reyes died in a vehicle accident on March 15, 2005. It should be noted that Reyes was 5'11" and German is 5'4," and both men have distinctly different facial features and body types.

In September 2026, German participated in a "reverse proffer" in which S.A. Binstock and T.F.O. Phillips presented evidence concerning the pending drug prosecution and newly discovered evidence of identity theft. German was proceeding pro se at this juncture, and standby counsel was present. German was expressly told that he was not required to speak or provide information at this meeting, that he was only asked to listen to the presentation of the evidence. Prior to the presentation beginning, German asked if he could retrieve documents from his cell and explain his position to the agents. The agents told German he does not have to do that. Nevertheless, without any request or government prompting, German again asserted his identity was Reyes and voluntarily retrieved and shared documents supporting that claim including, but not limited to a United States Passport issued in 2018 depicting German's photo and Reyes's identifying information, two Social Security Cards listing Reyes's Social Security Account number – one had the name Reyes Abel Santillanes and the other Galileo Hermes, a California birth certificate with the name and information of Reyes Abel Santillanes, and name change documents from 2024 showing the name Reyes Abel Santillanes changed to Galileo Hermes.

The United States subsequently obtained a superseding indictment charging identity theft related offenses. Those charges were not pending or contemplated when ICE conducted its July administrative inquiry.

German now seeks dismissal of the indictment and suppression of evidence based on the July ICE contact, asserting that the ICE officer violated his constitutional rights by failing to administer Miranda warnings and by communicating with him outside the presence of counsel.

## LAW AND ARGUMENT

### I. DEFENDANT HAS NOT ESTABLISHED THAT THE JULY ICE ENCOUNTER VIOLATED HIS FIFTH AMENDMENT RIGHTS.

German claims ICE violated his Fifth Amendment rights by contacting him in July 2026 without first administering Miranda warnings. German's argument fails to distinguish between routine administrative identification inquires and custodial interrogation designed or reasonably likely to elicit incriminating evidence.

The Fifth Amendment protects against compelled testimonial self-incrimination. Miranda v. United States, 384 U.S. 436, 444 (1966). Its procedural safeguards apply when an individual is subjected to custodial interrogation. Interrogation includes express questioning or its functional equivalent, that is, conduct officers should know is reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 302 (1980).

However, not every question asked of an incarcerated individual constitutes interrogation. The Eighth Circuit has repeatedly recognized that requests for routine biographical information ordinarily fall outside Miranda's interrogation requirement. United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985), United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996), United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1038 (8th Cir. 2010).

This exception is not absolute. Warnings may be required where officers should reasonably recognize that questions ordinarily seeking biographical information are directly relevant to suspected criminal conduct and likely to elicit incriminating responses. Brown, 101 F.3d at 1274.

In United States v. Sanchez-Velasco, 956 F.3d 576 (8th Cir. 2020), the Eighth Circuit addressed whether ICE officers violated Miranda by asking routine identification and immigration-status questions that subsequently became relevant to criminal charges involving misuse of a Social Security number. ("[S]ince officer could not have known his questions were likely to elicit incriminating information regarding criminal charges eventually brought against defendant, namely using social security card to complete Form I-9 and misusing social security number in completing state and federal tax forms, officer's questions related to defendant's immigration status, were relevant to contemplated civil removal proceedings, and were not related to his social security number, how he obtained and used it, or to his employment.")

Sanchez-Velasco was questioned during an immigration investigation and later while in ICE custody. He argued that his answers should be suppressed because officers had not administered Miranda warnings. The Eighth Circuit rejected his challenge. Although the defendant was in custody during the questioning at the ICE facility, the court held that the officer's routine biographical questions did not constitute interrogation. The questions concerned identity and immigration status for purposes of civil removal proceedings. The officer did not know of the subsequently charged Social Security offense and could not have reasonably anticipated that his questions would elicit incriminating responses concerning those offenses. The court distinguished routine administrative inquiries from questioning that an officer should recognize is directly relevant to suspected criminal conduct.

Following German's May 2026 arrest, his fingerprints were associated with a Mexican national. ICE initiated an administrative inquiry to determine German's identity and

immigration status. In July 2026, ICE contacted German concerning that inquiry. According to the contemporaneous report, German claimed his actual name was Galileo Hermes and represented he possessed a birth certificate, United States Passport, and Social Security cards establishing his identity and citizenship. German further stated his girlfriend possessed the documents and could provide them to ICE.

ICE sought to determine if German possessed legal status. German did not acknowledge that he had assumed another person's identity. Instead, he maintained the identity he claimed was his own. German asserted his claimed identity and identified a third party who could provide the supporting documents. The report does not establish that ICE sought an admission concerning identity theft or the fraudulent procurement of identification documents. In fact, the ICE agent accepted German's representation and discontinued the inquiry. The record does not establish that D.O. Kautz questioned German concerning how he obtained the identification documents, whether he had assumed another person's identity, or whether the documents had been fraudulently procured. Rather, the reported statements concern the type of identifying information ordinarily sought during an immigration-status inquiry.

The United States acknowledges that Alexander had disclosed alleged identity theft to law enforcement in June 2026. The relevant inquiry, however, is whether the circumstances known to the interviewing officer made the July questions reasonably likely to elicit incriminating responses concerning suspected criminal conduct. The mere fact that other investigators possessed information concerning Germans alleged identity fraud does not,

without examination of the interviewing officer's knowledge and the nature of the questions, establish that the July encounter constituted an interrogation.

Under Sanchez-Velasco, the subsequent evidentiary significance of German's identifying statements does not, standing alone, transform routine administrative questioning into custodial interrogation.

The defendant's Fifth Amendment argument overlooks the distinction between compelled self-incrimination and affirmative false representations. The Fifth Amendment does not confer a constitutional right to provide false information to a federal investigator. As the Court stated in Brogan v. United States, "neither the text nor the spirit of the Fifth Amendment confers a privilege to lie." 22 U.S. 398, 404, (1998). ("[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely."). Rather than declining to provide identifying information, the defendant affirmatively asserted that he was Galileo, claimed United States citizenship, and identified his girlfriend as someone who could provide documents supporting those representations. ICE accepted the defendant's explanation and documentation. Although the United States recognizes that false statements obtained through unwarranted custodial interrogations may be subject to suppression, the defendant's allegedly false representations do not, standing alone, establish that ICE compelled him to incriminate himself or otherwise violate his Fifth Amendment rights.

Although German's representation may ultimately be relevant to the identity-related offenses, their subsequent significance does not establish that ICE engaged in interrogation prohibited by Miranda. Thus, his motion should be denied.

## II. DEFENDANT HAS NOT ESTABLISHED A VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

The Sixth Amendment right to counsel is offense-specific and attaches upon the initiation of adversarial judicial proceedings. (See McNeil v. Wisconsin, 501 U.S. 171, 175, (1991), "The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced."). In determining whether the right extends to an uncharged offense, the courts apply the Blockburger test, under which two offenses are distinct if each requires proof of an element the other does not. Blockburger v. United States, 284 U.S. 299, 304 (1932).

At the time of the July ICE encounter, German was charged with federal drug-trafficking offenses. The identity related charges were not contemplated until later and were established utilizing a multitude of evidence independent of the ICE encounter, and a subsequent superseding indictment was filed in October 2026. Under Blockburger, the drug-trafficking offenses and identity-related offenses are distinct because each requires proof that the other does not. Accordingly, the defendant's Sixth Amendment right to counsel had not attached to the subsequently charged identity-related offenses.

Although the government may not deliberately elicit statements concerning charged offenses under the guise of investigating uncharged conduct, Maine v. Moulton, 474 U.S. 159, 179-80 (1985), nothing in the ICE report suggests that D.O. Kautz questioned German concerning the pending drug-trafficking prosecution. Rather, ICE sought to determine German's identity and immigration status following the fingerprint results.

German also alleges his former attorney prepared a document prohibiting law enforcement contact outside counsel's presence. However, the defendant has not produced the document or established that it constituted an effective invocation of Fifth Amendment right to counsel during custodial interrogations. See McNeil, 501 U.S. at 178, Edwards v. Arizona, 451 U.S. 477 (1981).

Accordingly, the defendant has not established a violation of his right to counsel and his motion should be denied.

## III. EVEN ASSUMING A MIRANDA VIOLATION, THE DFEFNDANT IS NOT ENTITLED TO SUPPRESSION OF THE GOVERNMENT'S REMAINING EVIDENCE.

Even assuming the July ICE encounter constituted an unwarned custodial interrogation, the defendant has not established the government's documentary and third-party evidence must be suppressed.

The Supreme Court has distinguished the exclusion of unwarded statements from the exclusion of evidence derived from voluntary statements. Michigan v. Tucker, 417 U.S. 433 (1974), United States v. Patane, 542 U.S. 630 (2004).

The Eighth Circuit has likewise held that a Miranda violation does not require suppression of derivative physical evidence when the unwarned statement was voluntary. United States v. Villalba-Alvarado, 345 F.3d 1007, 1013 (8th Cir. 2003).

Here, the defendant identified his girlfriend as the person possessing documents supporting his claimed identity. ICE subsequently contacted her, and she provided those documents. The defendant has not established that his statements were coerced or that the girlfriend's production was involuntary.

Further, the defendant's own brother disclosed the alleged identity theft in June, before the July ICE encounter. Alexander's disclosure could not have resulted from any alleged constitutional violation that could occur in the future.

HSI subsequently obtained Mexican death and fingerprint records relevant to the defendant's and Reyes's identity. Those records are distinct from the defendant's statements to ICE, and the defendant has not established that their admission would violate his Fifth Amendment rights. Furthermore, German provided the same statements and documents to D.O. Kautz in July as he did to S.A. Binstock and T.F.O. Phillips in September.

Accordingly, even if the defendant's July statements were subject to suppression, the alleged Miranda violation would not automatically require the exclusion of the government's remaining evidence.

## IV. THE DEFENDANT HAS NOT ESTABLISHED THAT THE GOVERNMENT'S EVIDENCE IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 403.

The defendant separately seeks exclusion of evidence under Federal Rule of Evidence 403, asserting that the evidence is fabricated and would confuse the jury. Rule 403 permits exclusion of evidence when its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presentation of cumulative evidence.

The defendant's disagreement with the evidence does not, standing alone, establish that its probative value is substantially outweighed by the dangers. The Mexican death certificate is directly relevant to the allegation that the defendant assumed the identity of his deceased cousin. The allegation that the death certificate is fabricated does not establish unfair prejudice

or jury confusion. Rather, a genuine challenge to the certificate's authenticity implicates the authentication requirements under Rules 901, 902, and, where applicable, 903.

The defendant produced a CURP with the name "Reyes Abel Santillanes Carrillo" to establish that the named individual is alive. (Doc. 125-2). A CURP is a Mexican population-registration identifier, not a proof of life document. It is an identification record, not a certification of the individual's current vital status. Reyes's dual citizenship is not disputed. Rather, the relevant questions are whether Reyes is deceased and whether the defendant unlawfully assumed Reyes's identity. Because a CURP does not prove the individual is currently alive, the existence of a CURP is not inherently antithetical to a death certificate. Furthermore, the existence of a CURP does not establish that the defendant is the person to whom the identifier was assigned. The defendant is relying on this document to not only establish that Reyes is alive and that the government fabricated evidence, but, by extension, that he (German) is Reyes. That document purports to establish no such claims. If anything, the defendant's CURP document would be misleading and confusing to a jury.

The defendant alleges that the Mexican death certificate was fabricated. The United States denies this allegation. The knowing use of fabricated evidence may violate due process. Mooney v. Holohan, 294 U.S. 103 (1935); Napue V. Illinois, 360 U.S. 264 (1959). S.A. Binstock requested and received this document from the Mexican government.

The defendant has not provided evidence that the United States has obtained a fabricated document nor that it has manufactured the death certificate. His reliance on a CURP that does not identify the named individual's current vital status does not establish fabrication. The United States government obtained the death certificate through HSI's investigation and

will establish its authenticity through appropriate evidence and applicable provisions of the Federal Rules of Evidence.

Accordingly, the defendant's reliance on the CURP does not establish that the government's death certificate is inaccurate or fabricated. Furthermore, the CURP, without additional evidence, is likely to cause more confusion with little evidentiary value and does not demonstrate that the government's evidence is inadmissible under Rule 403.

## V. DISMISSAL OF THE INDICTMENT IS NOT AN APPROPRIATE REMEDY FOR THE DEFENDANT'S ALLEGATIONS.

The defendant's request for dismissal is unsupported. An alleged Miranda violation ordinarily concerns the admissibility of statements obtained through custodial interrogation, not the validity of the indictment itself. Even when unwarned statements are suppressed, the Supreme Court has recognized that evidence derived from voluntary statements is not necessarily subject to exclusion. Patane, 542 U.S. 360; Tucker, 417 U.S. 433.

Similarly, remedies for Sixth Amendment violations must be tailored to the injury established. United States v. Morrison, 449 U.S. 361, 365-66 (1981). Dismissal is not warranted merely because a defendant alleges that law enforcement contacted him outside of counsel's presence. The defendant has not established that the July ICE encounter violated his constitutional rights or that any alleged violation prejudiced his ability to defend against the charges. Nor does the defendant's allegation that the government fabricated a death certificate establish grounds for dismissal.

An evidentiary hearing on a suppression motion is only required when the moving papers are sufficiently definite, specific, and detailed to establish a contested issue of fact. United States v. Stevenson, 727 F.3d 826, 830 (8th Cir. 2013). To the extent the Court

determines that a factual dispute exists concerning the July ICE encounter, the United States requests that any evidentiary hearing be limited to the issues necessary to resolve the defendant's particular suppression claim.

**CONCLUSION**

The defendant has failed to establish that the July ICE encounter constituted a custodial interrogation in violation of Miranda, and his Fifth and Sixth Amendment rights. ICE conducted a routine administrative inquiry to determine Defendant's identity and immigration status, during which defendant affirmatively asserted his claimed identity and offered corroborating documents. The Fifth Amendment does not confer a right to make false representations, and the defendant has not demonstrated that his statements were obtained through unconstitutional compulsion. Further, the defendant's Sixth Amendment right to counsel had not attached to the subsequently charged identity-related offenses, which are distinct from the original drug-trafficking offenses under Blockburger. Even assuming a Miranda violation occurred, the defendant has not demonstrated that suppression of the United States' remaining evidence or dismissal of the Superseding Indictment is warranted.

The defendant's Rule 403 challenge likewise fails. The Mexican death certificate is probative of a material issue in the identity-related prosecution, and the defendant has not demonstrated that its probative value is substantially outweighed by unfair prejudice or jury confusion. His CURP document does not state whether the listed individual is alive or dead and does not establish that the Mexican death certificate the United States obtained from the Mexican government is fabricated. The defendant's unsupported allegations of fabricated evidence do not establish a constitutional violation or justify dismissal.

WHEREFORE, the United States respectfully requests the Court deny the defendant's motion to dismiss, suppress, and exclude evidence in their entirety. Alternatively, should the Court determine that material factual disputes require resolution, the United States requests a limited evidentiary hearing.

Dated: November 2, 2026

NICHOLAS W. CHASE
United States Attorney

By: /s/ *Katie Nechiporenko*
KATIE NECHIPORENKO
Special Assistant United States Attorney
ND Bar ID 08832
655 First Avenue North, Suite 250
Fargo, ND 58102-4932
(701) 297-7400
katie.nechiporenko@usdoj.gov
Attorney for United States

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2026, the above-named document was filed electronically with the Clerk of Court through ECF.

I further certify that a copy of the foregoing documents will be mailed by first class mail, postage paid, to the following non-ECF participant(s):

German Santillanes - Inmate
c/o Barnes County Correctional Center
2371 7th Street SE
Valley City, ND 58072

Dated: November 2, 2026

Trina Hiemer
Trina Hiemer
Office of the United States Attorney